IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**RENEE M. SNELL,**

               Plaintiff,

   v.

**EMILY GERACI,** Vocational Rehabilitation
Counselor,

               Defendant.

No. 3:20-cv-01771-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Before me is Defendant Emily Geraci's Motion for Summary Judgment [ECF 153] and

Motion for Permanent Injunction [ECF 160]. Also before me is Plaintiff Renee M. Snell's

Emergency Motion [ECF 156], Motion for Summary Judgment [ECF 163], and Motion for

Equitable Relief [ECF 165]. For the following reasons, I GRANT Ms. Geraci's motions, DENY

Ms. Snell's motions, and DISMISS this case with prejudice.

**BACKGROUND**

**I.      Prior Lawsuits**

    Plaintiff Renee M. Snell and the Oregon Department of Human Services, Vocational

Rehabilitation ("VR") have a long, litigious history with one another. In a prior case before this

district, Judge Simon described that history. *See Snell v. Dep't of Hum. Servs.* (*Snell I*), No. 3:18-

cv-00227-SI, 2019 WL 3467924, at *3–5 (D. Or. July 31, 2019). I summarize his description here.

In 2001, Ms. Snell first sought services from VR. VR engaged an employment firm to help her find work. However, Ms. Snell was unwilling to share information about her disability and necessary accommodations with prospective employers, causing her assigned job developer to question whether Ms. Snell had the requisite social skills to secure employment. After a meeting with her team, Ms. Snell became angry, and VR determined a psychological evaluation was necessary. Ms. Snell refused the evaluation, and a hearing was held. The hearing officer affirmed VR's decision to require the evaluation.

In 2016, Ms. Snell again sought services from VR, and the same problems of the prior decade arose once more. Ms. Snell refused a cognitive assessment. She revoked her consent to release of information, hindering VR's ability to help her secure work. Another team meeting was held, again unsuccessfully. Ms. Snell refused to undergo further assessment and requested another hearing. The hearing officer determined that VR was within its rights to request assessments of Ms. Snell's barriers to work.

Despite the breakdowns, VR continued to work with Ms. Snell. VR engaged another employment firm. Ms. Snell requested a job with retirement benefits, asked to work 17 hours per week, requested an office job, and opposed sedentary work. She refused to take an assessment of her skills and interests. The firm determined it could not work with Ms. Snell.

VR engaged another employment firm. After multiple attempts to work with Ms. Snell, and like the firms that came before it, this firm ultimately concluded it could not proceed with Ms. Snell.

Given her lack of progress, VR determined a neuropsychological assessment was necessary. Ms. Snell refused. A hearing was held. Ms. Snell repeatedly refused to follow the hearing officer's instructions. After the hearing officer initially ruled against her, Ms. Snell sent the officer over 200 emails. Ms. Snell appealed to a reviewing official. The reviewing official found that Ms. Snell had cognitive and behavioral problems. The official found that Ms. Snell had consistently demonstrated an inability to work with others, often sending multiple emails to VR, at all hours of the day, written in all-caps, many of which were difficult to understand. The reviewing official issued a final order in VR's favor. The appeal of that final order ended up before Judge Simon.

Judge Simon affirmed, finding that the "record demonstrates that [Ms. Snell's] behaviors have been a barrier to maintaining working relationships with VR personnel and provides ample support for the Reviewing Official's decision that it was reasonable to request that [Ms. Snell] undergo a neurological assessment." *Id.* at *6.

Shortly after Judge Simon's ruling, Ms. Snell and VR ended up back in this district, this time before me. *See Snell v. Vocational Rehab. State Unit Pers. (Snell II)*, No. 3:20-cv-00242-MO, 2020 WL 4506779 (D. Or. Aug. 5, 2020). Ms. Snell had filed a new application for VR services. VR required certain medical information from Ms. Snell. But Ms. Snell refused to sign release forms, and VR was unable to determine her eligibility. Ms. Snell requested a hearing. The hearing officer partially ruled in Ms. Snell's favor, finding that she was eligible for services, but also ruled that Ms. Snell would have to sign the release forms and otherwise cooperate before VR could take the next steps. Although the officer found Ms. Snell eligible, she filed suit for injunctive relief, among other things, ostensibly seeking an order that she was indeed eligible for

services. I denied her motion as moot because the VR had already found in her favor on that issue.

## II.    This Lawsuit

On October 14, 2020, Ms. Snell initiated this lawsuit, her third. Compl. [ECF 1]. A couple months later, she filed an amended complaint. Am. Compl. [ECF 19]. Although difficult to decipher, Ms. Snell seems to suggest that VR is unlawfully withholding services. *Id.* at 5.[1] Ms. Snell names as defendant Ms. Geraci in her capacity as a Vocational Rehabilitation Counselor. *Id.* at 2.

In early 2020, VR found Ms. Snell eligible for services. AR 551–52, 572.[2] The next step was to develop an individualized plan for employment ("IPE"). VR informed Ms. Snell that she needed to undergo a neuropsychological evaluation and a functional capacity evaluation. AR 551. VR gave Ms. Snell a deadline to select a vendor for both evaluations. AR 551–52. VR also set a time to meet with Ms. Snell. AR 552.

Ms. Snell did not select a vendor nor sign the necessary releases. Emily Geraci Decl. [ECF 155] ¶ 4. And she skipped the meeting. *Id.*; AR 574. Ms. Snell informed VR that she would not attend any meetings with Ms. Geraci. Tr. Aug. 10 (Ex. 1003) at 298:13–19.[3]

Undeterred, Ms. Geraci sent Ms. Snell a follow-up letter, in which she reminded Ms. Snell of the need to choose vendors for the evaluations and asked questions relevant to the IPE. AR 576. Ms. Snell responded with "at least 50 pages of faxed materials," in which she did not

---

[1] Since the original document appears to have been uploaded with the pages out of order, I cite to the ECF page number.

[2] AR refers to the Administrative Record [ECF 116].

[3] This transcript, which is attached to Maureen McCarthy Decl. [ECF 154], is the certified transcript of the August 10, 2020, administrative hearing before an impartial hearing officer. For simplicity, I borrow Defendant's citation format. *See* Def.'s Mot. Summ. J. [ECF 153] at 1 n.2.

select a vendor nor meaningful respond to the questions. Geraci Decl. [ECF 155] ¶ 5; *id.* Ex. 1004. Ms. Snell suggested she had already undergone an evaluation, denied having a cognitive impairment, and disparaged Ms. Geraci, writing: "It is clear you are not capable of doing your job and cannot communicate related to your job functions . . . ." *Id.* Ex. 1004, at 2, 4.

Still, Ms. Geraci attempted to move forward, writing Ms. Snell yet another follow-up letter. AR 578–79. Ms. Geraci informed Ms. Snell that she did not "have enough current medical information" to prepare an IPE, since medical conditions can change over time. AR 578. She explained why VR needed a neuropsychological evaluation:

> First, you have not been successful in getting vocational rehabilitation services from VR in the past, and several of your working relationships with vocational rehabilitation counselors and other vocational rehabilitation professionals have not been effective. Second, we believe that you could benefit from assessment of your cognitive capacities. You previously expressed that you have some difficulties with short-term memory, and despite your wealth of experience working with VR, you still do not appear to understand parts of the vocational rehabilitation process . . . .

AR 578. Ms. Geraci reminded Ms. Snell that Judge Simon affirmed VR's authority to require evaluation. AR 579. Ms. Geraci asked for copy of the alleged prior evaluation or for Ms. Snell to select a vendor for a new evaluation. AR 579.

Ms. Snell responded with "at least 80 pages of faxed materials" but refused to comply with Ms. Geraci's requests. Geraci Decl. [ECF 155] ¶ 6. Instead, she continued to berate Ms. Geraci, requesting a counselor "who is truthful and not prone to lying under oath" and accusing Ms. Geraci of "hindering and delaying my goals." *Id.* Ex. 1005, at 1.

Admirably, Ms. Geraci kept at it, writing Ms. Snell yet another follow-up letter and giving her one more chance to comply. AR 581–82. Unsurprisingly, Ms. Snell continued down her path of noncompliance. Geraci Decl. [ECF 155] ¶ 7, Ex. 1006. Despite Ms. Geraci's patience and multiple letters, Ms. Snell accused Ms. Geraci of a "failure to communicate." *Id.* Ex. 1006,

at 3. Ms. Snell declared that she would "no longer communicate with Ms. Geraci" and asked Ms. Geraci to stop sending letters. *Id.* Ex. 1006, at 3, 6.

VR then sent Ms. Snell notice that it was closing her case because she "repeatedly chose[] not to provide authorization for release and/or participate in requested assessments." AR 587.

Ms. Snell requested a hearing. AR 232–33. A hearing was held on August 10, 2020, before Impartial Hearing Officer ("IHO") Nancy E. Hochman. Tr. Aug. 10 (Ex. 1003) at 1. During the hearing, Ms. Snell refused to stop interrupting, to the point where IHO Hochman had to mute her to allow the testimony to move forward. *Id.* at 229:15–230:10; 233:21–237:17. After being muted, Ms. Snell hung up and refused to participate further. *Id.* at 237:20–238:4; 265:25–266:14; 267:1–5. In a written opinion, IHO Hochman found in VR's favor and affirmed the decision to close the case. AR 666–81. IHO Hochman wrote that she had "observed during this case behaviors that would reasonably lead one to believe that a neuropsychological evaluation . . . was necessary," noting that Ms. Snell had "sent approximately 170 emails to the undersigned IHO—including seventeen on one day." AR 676. The IHO's decision was affirmed on administrative appeal. AR 1051–53.

This lawsuit followed. Before Ms. Geraci could file a responsive pleading to the amended complaint, Ms. Snell filed a new motion or supplemental filing nearly every day. Between December 23, 2020, when Ms. Snell filed the amended complaint, and February 10, 2021, when Ms. Geraci filed her answer, Ms. Snell filed nearly 30 supplemental filings containing "additional evidence." Over the next month, she filed over a dozen more. Meanwhile, she sent an excessive number of emails to my chambers.

Defense counsel reported an even greater deluge of emails from Ms. Snell. During the case before Judge Simon, Ms. Snell often sent defense counsel multiple emails per day, accusing counsel of dishonesty and fraud. Jesse B. Davis Decl. [ECF 161] ¶ 2. During the previous case before me, Ms. Snell emailed defense counsel 628 times in just over seven months. *Id.* ¶ 4. During this case, Ms. Snell emailed defense counsel nearly 1000 times. *Id.* ¶ 5.

At a status conference, I ordered Ms. Snell to cease emailing my chambers and defense counsel more than once per week. Min. of Proceedings [ECF 91]. I informed Ms. Snell that if she continued filing unduly burdensome and frivolous motions, I might order her to pay attorney fees and costs. *Id.*

Almost immediately, Ms. Snell returned to her daily practice of filing something. After Ms. Geraci filed the administrative record, Ms. Snell filed over 30 documents objecting to the evidence in less than one month. Only after I ordered Ms. Snell to limit her response to Ms. Geraci's motion for summary judgment to one filing and to cease filing multiple objections daily did Ms. Snell stop. Order [ECF 157].

Ms. Snell did not, however, stop emailing defense counsel, sending four emails immediately after my order prohibiting more than one email per week, and sending dozens more over the next few months. Davis Decl. [ECF 161] ¶ 6. Defense counsel asserts that "Ms. Snell's frequency and volume of communication are far, far beyond that of any litigant" counsel has encountered in 15 years. *Id.* ¶ 9. Counsel estimates spending at least 60 hours of billed time "interpreting and responding to plaintiff's many communications, responding to her several meritless motions . . . , and reviewing her nearly 100 filings in this case titled as 'Supplements' or 'Objections Adding Additional Evidence' or the like." *Id.* ¶ 10. Meanwhile, Ms. Snell has filed multiple complaints with the Oregon State Bar against defense counsel, including "separate

complaints on December 31, 2020, and January 30, January 31, April 16, April 17, and April 19, 2021." *Id.* ¶ 3–5.

The pending motions listed above are now fully briefed and ready for my rulings.

## DISCUSSION

### I.    Motions for Summary Judgment

Ms. Snell seeks judicial review of a final decision from VR. 29 U.S.C. § 722(c)(5)(J). Although the Ninth Circuit has yet to weigh in, courts have applied a modified de novo standard of review to these types of cases, "determin[ing] whether the agency's decision is supported by a preponderance of the evidence, while giving 'due weight' to the conclusions in the State's due process hearing." *Reaves v. Mo. Dep't of Elementary & Secondary Educ.*, 422 F.3d 675, 681 (8th Cir. 2005); *Snell I*, 2019 WL 3467924, at *2. For the following reasons, I would find in favor of VR and Ms. Geraci under either the modified de novo standard or the regular de novo standard.

Both sides filed motions for summary judgment. The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To survive, the "non-moving party must show more than the mere existence of a scintilla of evidence" and "must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1222 (9th Cir. 2018) (quoting *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013)). When parties file

cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (internal quotation marks and citation omitted).

I first discuss Ms. Geraci's motion, and then I discuss Ms. Snell's.

### A.    Defendant Geraci's Motion for Summary Judgment

Ms. Geraci argues that "VR was legally and factually justified in closing plaintiff's file because plaintiff resolutely refused to cooperate with valid requests for information that were necessary to develop plaintiff's IPE." Def.'s Mot. Summ. J. [ECF 153] at 18. I agree.

I agree with Judge Simon's holding in *Snell I* that VR has the legal authority to require further assessment of Ms. Snell, even after she is found eligible for services. Ms. Snell is precluded from relitigating this issue. "Issue preclusion, also known as collateral estoppel, bars the relitigation of issues actually adjudicated in previous litigation." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (internal quotation marks and citation omitted). "For issue preclusion to apply, four conditions must be met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Id.* (internal quotation marks and citation omitted). Here, the same issue that was before Judge Simon is before me: whether VR may require Ms. Snell to undergo additional assessments. That issue, which was necessary to decide the merits, was litigated, fully and fairly, and decided before Judge Simon.[4]

---

[4] For all intents and purposes, the defendant in both *Snell I* and this case is VR. But even if Ms. Geraci, who is sued in her role as a VR counselor, is a different defendant, "[d]efensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely

Even if Ms. Snell were not precluded from relitigating the issue, I agree with Judge

Simon's rationale and adopt it as my own. Federal regulations permit VR to obtain additional

data if such data "are necessary to determine the employment outcome and the nature and scope

of services to be included in the individualized plan for employment of an eligible individual."

34 C.F.R. § 361.45(f)(2)(i). To that end, VR may seek a comprehensive assessment, which may

include, to the degree necessary:

> an assessment of the personality, interests, interpersonal skills, intelligence and
> related functional capacities, educational achievements, work experience,
> vocational aptitudes, personal and social adjustments, and employment
> opportunities of the individual and the medical, psychiatric, psychological, and
> other pertinent vocational, educational, cultural, social, recreational, and
> environmental factors that affect the employment and rehabilitation needs of the
> individual.

*Id.* § 361.5(c)(5)(ii)(C); *see also id.* § 361.5(c)(5)(ii)(D) (providing that a comprehensive

assessment may also include "an appraisal of the patterns of work behavior of the individual and

services needed for the individual to acquire occupational skills and to develop work attitudes,

work habits, work tolerance, and social and behavior patterns necessary for successful job

performance"). Clearly, VR has the legal authority to require a neuropsychological evaluation

and a functional capacity evaluation.

VR was also factually justified in requiring a neuropsychological evaluation, as Judge

Simon ruled, considering the long, troubled history between Ms. Snell and VR. After all, VR is

tasked with helping eligible clients not only find but also *retain* work, see, e.g., 34 C.F.R.

§ 361.37(a)(1), and, as noted by Ms. Geraci, Ms. Snell's behavior—"blaming, hostility,

unsubstantiated claims of incompetence and dishonesty, focusing on minutia at the expense of a

---

switching adversaries." *Parklane Hosiery, Inc. v. Shore*, 439 U.S. 322, 329 (1979) (internal
quotation marks and citation omitted).

larger goal, overwhelming others with garbled communications"—is evidence of a person who "is likely to have trouble obtaining employment and maintaining it for a meaningful period." Def.'s Mot. Summ. J. [ECF 153] at 23. As Judge Simon observed, Ms. Snell's arguments during litigation "provide additional support for the conclusion that [she] might benefit from a neuropsychological assessment." *Snell I*, 2019 WL 3467924, at *7 n.1. I agree.

Additionally, VR was factually justified in requiring Ms. Snell to provide updated medical records and undergo a functional capacity evaluation, considering Ms. Snell's medical conditions. *See* AR 578 (explaining that VR needed more information about how Ms. Snell's medical conditions currently affect her ability to work); AR 581 (explaining that Ms. Snell's outdated records "do not sufficiently describe [her] current level of physical functioning").

Despite the legal authority, factual justification, the reasonableness of VR's requests, and Ms. Geraci's patience, Ms. Snell utterly refused to work with Ms. Geraci and VR. Based on the record before me, VR was more than justified in its decision to close Ms. Snell's case, and no rational juror could determine otherwise.

In response, Ms. Snell suggests opposing counsel has falsified her medical records and references an evaluation "which actually shows evidence of Plaintiff's <u>cognitive and memory</u> **<u>abilities</u>**." Pl.'s Emergency Mot. [ECF 156] at 1–2; *see also* Pl.'s Resp. [ECF 158] at 3. Ms. Snell argues that VR has no evidence that she suffers from cognitive or memory problems. Pl.'s Emergency Mot. [ECF 156] at 2.

I reject this argument. Despite using terms that suggest fraud, Ms. Snell really argues that VR's decision to require further evaluation was not justified. For the reasons discussed above, and for the reasons discussed in Judge Simon's ruling, I disagree. VR was fully justified in requesting further evaluation, and there is no evidence in this record that VR "falsified"

documents to support its position. The overwhelming evidence before me reveals that Ms. Snell refused to comply with reasonable and permissible requests, and no rationale juror could find otherwise.

Aside from the "falsification" issue, Ms. Snell seemingly attempts to relitigate everything that has ever happened between her and VR. *See generally* Pl.'s Resp. [ECF 158]. But only VR's decision to close Ms. Snell's most-recent file is before me. *See* 29 U.S.C. § 722(c)(1) (mandating procedures for review of "determinations made by personnel of the designated State unit that affect the provision of vocational rehabilitation services to applicants or eligible individuals"). As to prior decisions by VR, Ms. Snell did not appeal either Judge Simon's or my prior ruling, and the time to challenge those rulings has long since passed.

Accordingly, I GRANT Ms. Geraci's Motion for Summary Judgment [ECF 153], and I DENY Ms. Snell's Emergency Motion [ECF 156].

**B.    Plaintiff Snell's Motion for Summary Judgment**

Ms. Snell filed what she titled Motion for Summary Judgment [ECF 163]. In it, she claims that Ms. Geraci still has not made an eligibility determination. *Id.* at 1. This is incorrect. *See* AR 551–52, 572. The breakdown this time around came after the eligibility determination and during the development of Ms. Snell's IPE. Ms. Snell also claims that Ms. Geraci has not "informed the Plaintiff of information necessary for VR to make an eligibility or ineligibility determination." Pl.'s Mot. Summ. J. [ECF 163] at 1. This could not be more incorrect. As detailed above, Ms. Geraci repeatedly informed Ms. Snell of next steps, and Ms. Snell repeatedly refused to comply.

Ms. Snell then turns her ire to the court: "It is a disgrace the Federal District Court in Portland, OR, in 20+ Years as never reviewing Eligibility . . . determinations as made by the State Unit personnel." *Id.* at 2. However, this is now this court's *third* opinion on this subject.

I DENY Ms. Snell's Motion for Summary Judgment [ECF 163].

## II.    Motions for Equitable Relief

Both sides seek equitable relief. I first discuss Ms. Geraci's Motion for Permanent Injunction [ECF 160], and then I discuss Ms. Snell's Motion for Equitable Relief [ECF 165].

### A.    Ms. Geraci's Motion for Permanent Injunction

Ms. Geraci and VR

> seek an order protecting them from plaintiff's harassment and its associated drain on the agency's human and material resources and requiring plaintiff to comply with the reasonable expectations of [VR], as consistently upheld in administrative proceedings, and to comply with the orders of this Court, before [VR] must accept an application from plaintiff for vocational rehabilitation services or to provide such services to her.

Def.'s Mot. Permanent Inj. [ECF 160] at 2.

The court shall grant the relief it determines to be appropriate. 29 U.S.C. § 722(c)(5)(J)(ii)(III). I find Ms. Geraci's requested injunction to be appropriate. As detailed above, Ms. Snell has resisted VR's efforts to help her for 20 years. She has now brought three lawsuits in federal court and lost each time. As discussed in this opinion and in Judge Simon's opinion, VR's requests for further evaluation and cooperation are reasonable and permissible. Ms. Snell has no legal grounds to refuse those requests and still receive the services she wants. Without equitable relief, I see no reason to believe Ms. Snell will do anything but continue her practices and end up right back in federal court with her fourth losing case. This serves no worthwhile purpose and serves only to waste VR's and this court's resources—particularly

considering Ms. Snell's frequent emails, frivolous filings, and inability to follow court orders. Accordingly, I GRANT the Motion for Permanent Injunction [ECF 160] and order the following.

Ms. Snell shall not use any means of correspondence with VR other than U.S. mail, and VR may disregard or block the receipt of any communication from Ms. Snell by any other means. I share VR's hopes that "the increased effort required to communicate in this manner will encourage plaintiff to organize her thoughts, improve the clarity of her correspondence, and reduce its frequency, while also reducing the associated burden her correspondence places upon VR and its counsel." Def.'s Mot. Permanent Inj. [ECF 160] at 4.

In the event Ms. Snell again applies for VR services, her application will not be deemed complete until all the following are complete:

i)      She has obtained a physical capacity evaluation from a group of providers identified by VR, and has signed a release of information allowing VR to obtain the evaluation report and to contact the provider about this evaluation;

ii)     She has obtained a new neuropsychological evaluation from a group of providers identified by VR, and has signed a release of information allowing VR to obtain the evaluation report and to contact the provider about this evaluation. Ms. Snell may not make independent contacts to the chosen provider until after the evaluation is conducted and the evaluation report complete; and

iii)    Ms. Snell will identify any other physical, mental, or behavioral health providers, and sign releases of information for those providers, who may have information relevant to her potential barriers to employment.

The information resulting from these requirements shall be deemed "information necessary to initiate an assessment to determine eligibility and priority for services" pursuant to 34 C.F.R. § 361.41(b)(2)(ii), and thus Ms. Snell's application will not be deemed complete, and none of the associated legal duties or deadlines associated with a complete application will accrue, until that information has been provided. VR will remain responsible for the costs of these evaluations, as it would be in the usual case in which VR requests additional information.

Should Ms. Snell again apply for VR services, she shall answer questions and participate meaningfully in VR's effort to understand her goals, interests, and concerns—even if she believes she has already done so in the past. Ms. Snell's failure to do so shall be deemed conclusive evidence that she is not "available to complete the assessment process" under 34 C.F.R. § 361.41(b)(2)(iii), her application will not be deemed complete, and none of the associated legal duties or deadlines associated with a complete application will accrue until Ms. Snell has provided that information. Ms. Snell shall participate collaboratively with third-party vendors or service providers engaged by VR to work with her.

Ms. Snell may not file any legal challenge to VR's actions, whether regarding an eligibility determination or development of IPE services, until she has complied with VR's clear authority to require further assessment, updated medical records, and collaborative participation. The clerk of this Court shall not accept any new complaint from Ms. Snell against Oregon Department of Human Services, Vocational Rehabilitation, or any of its personnel, unless the complaint alleges that Ms. Snell has complied with the above requirements.

If Ms. Snell refuses to comply with this injunction, Oregon Department of Human Services, Vocational Rehabilitation, may seek to enforce it through any lawful means, such as proceedings for contempt of court, and may seek an order barring plaintiff from applying for or seeking vocational rehabilitation services.

### B.    Ms. Snell's Motion for Equitable Relief

Ms. Snell claims that VR has violated federal regulations and altered the text of those regulations. Pl.'s Mot. Equitable Relief [ECF 165] at 1. She states that this "crime calls into questions all reviews to date for the last twenty years." *Id.* She seeks punitive sanctions.

For the above reasons, I find in favor of VR and Ms. Geraci, and I reject all Ms. Snell's arguments. I DENY Ms. Snell's Motion for Equitable Relief [ECF 165].

## CONCLUSION

For the above reasons, I GRANT Defendant's Motion for Summary Judgment [ECF 153] and Motion for Permanent Injunction [ECF 160]. I DENY Plaintiff's Emergency Motion [ECF 156], Motion for Summary Judgment [ECF 163], and Motion for Equitable Relief [ECF 165]. Other pending motions, if any, are DENIED as moot. I DISMISS this case with prejudice.

IT IS SO ORDERED.

DATED this 3d day of August, 2021.

MICHAEL W. MOSMAN
United States District Judge